TODD *v.* The INHABITANTS of ROME.

A town is not liable in any form, for the deficiency of a road, unless, by regular legal proceedings, or by *user* and acquiescence for a sufficient term of time, they have acquired the right to enter upon the land, and make and repair the road.

Such use and acquiescence for twenty years, and perhaps for a shorter period, may be considered sufficient to give the town a *right*, and subject them to *liability* to repair, and to its legal consequences.

No *certiorari* lies to set aside the doings of a town respecting the location and acceptance of a *town* way.   If they are not legal, they are *merely void.*

This was an action on the statute, [*Stat.* 1821, *ch.* 118. *sec.* 17.] for an injury to the plaintiff's horse, occasioned by a defect in a causeway on a supposed town road in *Rome ;* and came before the Court upon a motion to set aside a nonsuit.

The plaintiff, at the trial of the issue, proved from the town records of *Rome*, that at a town meeting on the 16th day of *Jan-*

*uary* 1815, the inhabitants voted " to accept a piece of a " road, beginning at a stake and stone north of *Ivory Blasdell's* " cut-down, and running *southwesterly* to *Solomon Tracy's* dwelling " house in *Rome ;* said road to be four rods wide, and to be on " each side of said course." He also proved, by one of the se- lectmen for the years 1814 and 1815, that he, with the other selectmen, in the autumn of 1814, laid out a road from *Blasdell's* to *Richard Furbish's*, in *Rome,* and made minutes thereof, which were presented at the town meeting on the 16th of *January* 1815, but he did not recollect whether those minutes were signed or not;—that the road as laid out by them passed the dwelling house of *Solomon Tracy, junior,* but the town accepted only the part extending from this latter house to *Blasdell's ;*—and that the witness, who was also town-clerk, in recording the accept- ance of the road, omitted the addition of *junior* to the name of *Tracy,* by mistake. He also proved that the surveyor of high- ways, for the year 1815, caused the road from *Blasdell's* to *Sol- omon Tracy, junior's,* to be cut out, built a small bridge, and made a causeway of logs, on the same road, on which causeway the plaintiff's horse received the injury complained of;—that a surveyor of highways, living on the road between *Furbish's* and *Blasdell's,* had been chosen by the town every year since the acceptance of said piece of road, and had expended thereon more or less of the highway taxes of the inhabitants living thereon;—but it did not appear that the assessors had made out any warrants to the surveyors of highways, nor any assign- ments of their limits. It was also proved, that in the years 1819 and 1820, the surveyor living on said road had the names of the men living on the same, with the amount of each man's tax, given him by the assessors, and that he caused the same to be expended in labour on that road ; but still had no warrant or assignment of his limits, under the hands of the assessors ;— and that after the injury to the plaintiff's horse, the surveyor living on the road repaired the causeway, at the expense of the town. It also appeared that due but ineffectual search had been made for the minutes or report of the selectmen who laid out said road, it being supposed to be lost.

On the part of the defendants it was proved that there was a town road leading from *Blasdell's* to *Solomon Tracy, senior's,*

Todd v. Rome.

which had been opened and used before the 16th of *January* 1815, the course of which is south 30 degrees west, and that the course of the road contended for by the plaintiff is south 80 degrees west;—that during the spring and summer three sets of bars have usually been kept up across the road between *Furbush's* and *S. Tracy junior's*, and one set between the latter place and *Blasdell's*;—that at *Furbush's* it terminates in a town road leading to *New-Sharon*, and is there closed by bars;—that at *Blasdell's* it terminates in another town road leading to *Mercer*, where it is open;—that the road on which the injury happened is not fenced at the sides;—that the line fence of one of the owners of the land crosses the road at one of the barred places;—that the old road from *Blasdell's* to *Tracy's* was fenced up in 1815 and that no labour had since been expended upon it;—and that the causeway is ten rods northerly of a course south 80 degrees west from *Blasdell's* to *S. Tracy junior's*, but yet is built in the travelled path. They also proved that the person riding the plaintiff's horse was notified that it was obstructed by bars, which, however, he removed.

It further appeared that the defect in the causeway was occasioned about sixteen days before, by a freshet, of which the surveyor living on the road had due notice;—and that it was repaired by a surveyor of highways in the summer of 1821.

Upon this evidence, by advice of the Judge who presided at the trial, the plaintiff became nonsuit, subject to the opinion of the whole Court upon the general question whether, upon the facts stated, the action could be sustained.

*Boutelle* and *Clark*, for the plaintiff.

The statute which gives the action being remedial, is to be liberally expounded, in favour of the party injured; imposing on towns the duty to repair all highways, in whatever manner established.

1. The road in question was well located according to the statute;—for there was a laying out by the selectmen, and an acceptance by the town. The location by the selectmen was sufficiently recorded, upon the paper laid before the town; which it was not necessary they should *sign*. But if the proceedings of the town or its officers were not in all respects

formal, yet the record of the acceptance of the road by the town ought to have at least the effect of an adjudication of the sessions that a way prayed for is of public convenience; behind which record, parties are not permitted to go, where there has been an acquiescence in the road as located. *Ex parte Miller*, 4 *Mass.* 565. *Commonwealth v. Justices of Norfolk*, 5 *Mass.* 435. *Hardin's Rep.* 258.

Nor is it competent for the town to deny their own record. And here they have recorded a way established from *Blasdell's* to *Tracy's.*

The original record made by the selectmen being lost, we may presume that the record of the town contains only the general description of the way; and that the lost paper contained the particular courses. *Makepeace v. Bancroft*, 12 *Mass.* 469. If the existing record discovers any uncertainty in the description either of persons or courses, it is made certain by reference to the actual location. As to the course described as *southwesterly*, it must be taken to mean any course between south and west, which will lead to the *terminus* mentioned; and the actual location shews which of the *Tracys* was intended. The omission of *junior* from the name of one of them reduces the case to the common occurrence of a latent ambiguity, which may always be explained by matter *ab extra*. *Peake's Ev.* 112. 10 *Johns.* 133.

2. But if it is not a way of record, yet it is a way *de jure*, or *de facto;* and however the town may have acquired the easement, they are bound, from the moment of acceptance, to maintain it, at least until it is as publicly abandoned. The modes in which such easement may be acquired are various, but the authorities all go to prove the correctness of this position. *Alden v. Murdock*, 13 *Mass.* 258. 8 *D. & E.* 608. 1 *Campb.* 260, 262. 8 *East*, 6. 11 *East*, 265. *Phillips' Evid.* 126. *Shaw v. Crawford*, 10 *Johns.* 236. *Hathorne v. Haines*, 1 *Greenl.* 245. 2 *Str.* 909. If the town, by any act of their own, as by erecting guide-boards, or by open assumption of the obligation of maintaining a way as a public road, induce the unwary traveller to pass over it to the injury of his limbs or property, it is most reasonable that the town should respond in damages; and that this liability should continue until the public are informed,

by some act of equal notoriety, that the obligation is no longer recognized by the town.

The bars erected across the road are no evidence of any denial of this duty, because towns being authorized by the statute to permit such erections, they must be presumed to be kept up by leave of the town, rather than to have been nuisances, unless the contrary appear. And such license would be in itself sufficient evidence, against the town, of the existence of the road.

*Bond*, for the defendants.

1. Here is no legal way. It should not only have been laid out by the selectmen, but they should have made a report of their doings under their hands, to the town, and this report should have been recorded. *Commonwealth v. Merrick*, 2 *Mass.* 529. But here was no report, and so the subject was never legally before the town.

Besides, the forms of law not having been observed in the location of the road, the town have acquired no right to enter on the land to make or repair it. Every person thus entering would be liable in trespass. And if the town have not the right to make repairs, they are not responsible for damages arising from defects in the road; for the right and the obligation are inseparable.

2. If it were a way of record, yet the record is the only evidence; and if *this* be regarded, the injury did not happen upon the way laid out, but on private property far distant from it. And this record is not to be contradicted by the parol evidence offered. *Peake* 112. *Hunt v. Adams*, 7 *Mass.* 518. *King v. King*, *ib.* 496. *Townsend v. Weld*, 8 *Mass.* 146. *Stackpole v. Arnold*, 11 *Mass.* 27. But if it were competent for the plaintiff to introduce the parol evidence offered at the trial, yet the case shews that the causeway on which the injury happened is several rods north of the course contended for, and so not within any possible liability of the defendants.

3. But if the injury happened upon a road regularly laid out, yet it was merely a *private* and not a public way; and such ways towns are not obliged to support. The only obligation on them is imposed by statute, and this speaks of highways and town ways only. Private ways are reparable by *private*

*persons*, and their liability for not repairing seems recognized by the same section on which this action is founded.

MELLEN C. J. delivered the opinion of the Court as follows :

In this case a nonsuit was entered by consent of parties, and all the evidence has been reported; and we are to decide upon it in the same manner as though the whole had been presented · upon a statement of facts.

In the argument several questions have been discussed which it is not necessary for us now to decide. The only points demanding attention are—whether a town way was legally laid out and established at the time and in the place contended for by the plaintiff;—and if not,—whether a road or highway has been *in fact* opened and used in such a manner and for such a length of time as to render the town liable for the damages done to the plaintiff's horse by means of the defect in the bridge situate on such alleged road or highway.

As to the *first* of these points, there seems to be no doubt upon the facts before us. In the case of the *Commonwealth v. Merrick*, 2 *Mass.* 529, it was decided that the doings of the selectmen relating to the laying out a town way must be recorded; otherwise the way is not legally established. In the present case that was not done. What those doings were is but imperfectly known; nor does it appear that they made and signed any location of the way. The way then clearly was not a legal *town* way, or *private* way; and cannot be considered as such, unless in an action or prosecution against such town. It is urged by the plaintiff's counsel that the town cannot object to their own proceedings on account of their irregularity; and that as *against them* the location and acceptance of the way are to be considered legal and binding. To this it may be replied that any of the owners of the land through which the supposed way is laid could have maintained an action against the surveyor for opening and making it;—because such owner certainly might object to the irregularity of the proceedings, even if the town could not. How then could the town be liable, in any form, for the deficiency of such supposed road, if they had no legal right to open and make it without the consent of such owner? Their *duty* cannot be broader than their *right*. It is true if the owners of the lands over which the supposed road

Todd *v.* Rome. ·

has been laid, had *assented to it*, even though it was not located exactly in the course described in the return and acceptance of it, and the public had been permitted to use it according to its practical location, without molestation or objection, and such consent, acquiescence and *user* had been continued for twenty years, or perhaps for a shorter time;—these circumstances might essentially change the ground, and be considered sufficient to give the town a *right* to repair the way, and subject them to *liability* to repair, and to the legal consequences of neglecting their duty. But such is not the proof in the present instance.

It has, however, been urged that the way must be considered as a legal one, until it shall be declared void by some legal process; in the same manner as county roads which have been laid out are to be deemed, and all the proceedings relating to their location valid, however erroneous and imperfect they may be, until quashed on a writ of *certiorari*. The cases are in no wise parallel. No *certiorari* lies to set aside the doings respecting the location and acceptance of a *town* way. Hence if they are not *legal*, they are *void*, and not merely *voidable*.

As to the *second* point;—to prove that a way *de facto* existed as above mentioned, the plaintiff relies on the circumstance that the road was opened and made in the year 1815 by the surveyor of the town of *Rome*,—and that he had at different times expended the money of the town in repairing it, by permitting the persons living on the road to work out upon it the amount of their highway taxes,—and that this was done by the consent of the assessors, verbally given. But, opposed to this is the fact that ever since the year 1815 this supposed road has remained, in all parts of it, without any fence on either side, and several of the owners of the adjoining lands have extended their *line fences across the road;* so that no persons could pass or repass without removing bars in three or four places. We consider this as clearly shewing a controling power, exercised by the owners of the lands, over all the supposed claims of the public, utterly inconsistent with the nature of a highway or town way *de facto;* and are satisfied that the nonsuit ought to be confirmed.    *Motion to set aside the nonsuit overruled—*

*And judgment for defendant.*